UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED HEIDARPOUR, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>EMPIRE CAPITAL FUNDING GROUP INC.,<br><br>    Defendant. | Case No. 18-cv-00250-KAW<br><br>**ORDER REASSIGNING CASE TO DISTRICT JUDGE; REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 16 |

Plaintiffs Fred Heidarpour and Abante Rooter and Plumbing Inc. ("Abante Rooter") filed the instant suit against Defendant Empire Capital Funding Group Inc., asserting violations of the Telephone Consumer Protection Act ("TCPA") and California's Unfair Competition Law ("UCL"). (Compl. ¶¶ 1, 63.) On May 10, 2018, Plaintiffs filed a motion for default judgment. (Plfs.' Mot. for Default Judgment, Dkt. No. 16.) The Court held a hearing on June 21, 2018, at which Defendant failed to appear.

Since Defendant, by the virtue of being in default, has not consented to the undersigned, the Court reassigns this case to a district judge and recommends that Plaintiff's motion be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Plaintiff Heidarpour is an Arizona citizen who conducts business in the Northern District of California. (Compl. ¶ 2.) Plaintiff Heidarpour has registered the phone number (480) 595-XXXX; this number is registered to a residential telephone service and has been listed on the National Do Not Call Registry since November 12, 2014. (Compl. ¶¶ 25-27; Heidarpour Decl. ¶ 7, Dkt. No. 16-1.)

Plaintiff Abante Rooter is a California corporation, with its principal place of business in

Emeryville, California. (Compl. ¶ 3.) Plaintiff Abante Rooter has registered the phone number (209) 383-XXXX, which is registered to a cellular telephone service. (Compl. ¶¶ 30-31.) Plaintiff Heidarpour answers the calls made to (209) 383-XXXX. Plaintiff Abante Rooter also has registered the phone number (925) 253-XXXX. (Compl. ¶ 34.) This number is registered to a cellular telephone service and has been listed on the National Do Not Call Registry since February 21, 2007. (Compl. ¶¶ 35-36; Heidarpour Decl. ¶ 8.) Plaintiff Heidarpour also answers calls made to this number. (Compl. ¶ 34.)

Defendant brokers loans from alternative lenders to small businesses. (Compl. ¶ 20.) On November 11, 2015, Plaintiff Heidarpour received a call on his cell phone; the call was directed to (480) 595-XXXX, and calls to this number are forwarded to Plaintiff Heidarpour's cell phone while he is traveling. (Compl. ¶ 39.) When Plaintiff Heidarpour picked up, he received a prerecorded call advertising small business loans from Defendant. Plaintiffs had never heard of Defendant, and had not given Defendant permission to call his number. On November 18, 2015, Plaintiff Heidarpour received another call to (480) 595-XXXX, causing his cell phone to ring. (Compl. ¶ 40.) The call was again a prerecorded message advertising small business loans from Defendant. (Compl. ¶ 40.)

In total, Plaintiffs received forty-three calls from Defendant. (Compl. ¶¶ 41, 46.) Forty-one of the calls were made to (480) 595-XXXX, including twenty-three calls in August 2016, six calls in September 2016, one call in October 2016, five calls in November 2016, three calls in February 2017, and one call in March 2017. (Compl. ¶ 46.) One call was made to (209) 383-XXXX on February 22, 2017, and one call was made to (925) 253-XXXX on February 23, 2017. (Compl. ¶ 46.) Forty-two of the calls were made after Plaintiffs requested that Defendant stop calling. (Compl. ¶¶ 45-46.) More than a dozen of the calls were made to Plaintiff Heidarpour while he was in the Northern District of California. (Compl. ¶ 43.) Most of the calls used a prerecorded voice, while the remainder was marked by an unnatural click or pause, indicating that the call was placed by an automatic telephone dialing system ("ATDS"). (Compl. ¶¶ 42, 46.)

On January 11, 2018, Plaintiffs filed the instant suit against Defendant, alleging four causes of action: (1) non-emergency robocalls to cellular telephones, in violation of 47 U.S.C. §

2

1    227(b)(1)(A); (2) non-emergency robocalls to residential telephones, in violation of 47 U.S.C. §

2    227(b)(1)(B); (3) telemarketing solicitations to National Do Not Call registrants, in violation of 47

3    U.S.C. § 227(c); and (4) violation of California's Unfair Competition Law.  (Compl. ¶¶ 47-65.)

4    The complaint and summons were served on Defendant by personally delivering a copy to an

5    authorized individual at the business address, and by mailing a copy of the complaint and

6    summons.  (Dkt. No. 7.)  On March 7, 2018, Plaintiffs moved for entry of default.  (Dkt. No. 8.)

7    On March 9, 2018, the Clerk of the Court entered default against Defendant.  (Dkt. No. 9.)

8        On May 10, 2018, Plaintiffs filed the instant motion for default judgment, seeking

9    $106,500 in statutory damages for Plaintiff Heidarpour, $4,500 in statutory damages for Plaintiff

10   Abante Rooter, and $475 in costs.  (Plfs.' Mot. for Default Judgment at 16.)  The motion was

11   served on Defendant by certified mail.  (Dkt. No. 16-4.)  As of the date of this order, Defendant

12   has not responded.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case.  "The district court's decision whether to enter default judgment is a discretionary one."  *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).  In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for the court to consider:  (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages.  *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987).

### III. DISCUSSION

#### A. Jurisdictional Requirements

##### i. Subject Matter and Personal Jurisdiction

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. (*In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties").) In his complaint, Plaintiff alleges violations of a federal statute, the TCPA, 28 U.S.C. § 1331. The Court thus has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331(a).[1]

Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable long-arm statute. Second, the exercise of jurisdiction must comport with federal due process. (*Dow Chem. Co. v. Calderon,* 422 F.3d 827, 830 (9th Cir. 2005).) The applicable long-arm statute is California's. California's long-arm statute permits local courts to exercise personal jurisdiction to the extent allowed by the Due Process Clause of the California and United States Constitutions. (Cal. Civ. Proc. Code § 410.10. Federal Due Process requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. (*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).)

There are two types of personal jurisdiction – general and specific. The Ninth Circuit applies the following three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

---

[1] Plaintiffs do not seek relief related to the Unfair Competition Law claim. (*See* Plfs.' Mot. at 3.) The Court would, however, have supplemental jurisdiction to decide the related state law claims under 28 U.S.C. § 1367.

4

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Company*, 374 F.3d 797, 802 (9th Cir. 2004).

In this case, Defendant made calls to Plaintiff Heidarpour while he was in this district, as well as to Plaintiff Abante Rooter, a resident of this district. (Compl. ¶¶ 43-44.) Defendant therefore directed its actions at California, and the claims herein arise from those same actions. *Compare with Drew v. Lexington Consumer Advocacy*, Case No. 16-cv-200-LB, 2016 WL 9185292, at *3 (N.D. Cal. Aug. 11, 2016) (finding that the out-of-state corporate defendant purposefully directed its activities to California by sending six text messages to a California resident), *report and recommendation adopted by Drew v. Lexington Consumer Advocacy*, Case No. 16-cv-200-SBA, 2016 W: 9223901 (N.D. Cal. Sept. 2, 2016).

### ii. Venue

The Court finds that venue is proper because a substantial part of the events giving rise to the claim occurred in this district. 28 U.S.C. § 1391(b)(2). At least a dozen of the calls were made to Plaintiff Heidarpour while he was in this district. (Compl. ¶ 43.) Calls were also made to Plaintiff Abante Rooter, who is a California resident, and thus "[t]he harms suffered by Plaintiff [Abante Rooter] were felt in the [Northern] District, where [it] resides, which under the Ninth Circuit, is enough to satisfy the 'substantial part of the events' test." *Sapan v. Dynamic Network Factory, Inc.*, Case No. 13-cv-1966-MMA (WVG), 2013 WL 12094829, at *3 (S.D. Cal. Nov. 25, 2013).

### iii. Service of Process

This case was filed on January 11, 2018, and Defendant was served with the summons and complaint on February 12, 2018 by Mohamed Bouri, who is over the age of 18 and not a party to this action. (Dkt. No. 7.) The summons and complaint were also mailed on February 15, 2018. The notarized Affidavit of Process was filed with the Court on March 6, 2018. Defendant failed to answer, so Plaintiff filed a request for entry of default. (Dkt. No. 8.) Defendant's default was entered on March 16, 2018. (Dkt. No. 9.) The instant motion for default judgment was also

served on Defendant.  (Dkt. No. 16-4.)

### B. *Eitel* Factors

An analysis of the *Eitel* factors establishes that a default judgment is appropriate in this case.

#### i. *Eitel* Factor 1: Possibility of Prejudice to Plaintiff

If Plaintiffs are not granted relief in this case, they will likely be left without other recourse.  Such potential prejudice to the plaintiff militates in favor of granting a default judgment.  See *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).

#### ii. *Eitel* Factors 2 and 3: Meritorious Claim Alleged in Complaint

Plaintiffs bring three causes of action under the TCPA.  First, Plaintiffs bring a claim under 47 U.S.C. § 227(b)(1)(A), which prohibits making a call using an ATDS or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service.  A plaintiff must show: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing [or artificial or prerecorded voice]; (3) without the recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1043 (9th Cir. 2012).  Here, Plaintiffs have pled that Defendant made one call each to (209) 383-XXXX and (925) 253-XXXX, both of which are cell phone numbers.  (Compl. ¶¶ 31, 36, 46.)  Plaintiffs also plead that the calls were placed by an ATDS, as "marked by an unnatural click or pause at the beginning."  (Compl. ¶¶ 42, 46.)  Courts have found that alleging a click or pause at the beginning of the call is sufficient to plead the use of an ATDS.  *Martin v. Direct Wines, Inc.*, No. 15 C 757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) ("To raise a right to relief above the speculative level on a TCPA claim, a plaintiff can include facts such as . . . having heard a distinctive 'click and pause' after having answered the call"); *Connelly v. Hilton Grant Vacations Co., LLC*, No. 12CV599 JLS (KSC), 2012 WL 2129364, at *5 (S.D. Cal. June 11, 2012) (finding sufficient allegations of the use of an ATDS where the plaintiffs alleged that "[t]he calls had a delay prior to a live person speaking to Plaintiffs or did not even transfer to a live person").  Finally, Plaintiffs plead that they had never heard of Defendant and had not given it permission to call.  (Compl. ¶ 39.)  The Court finds that Plaintiffs have sufficiently pled a meritorious claim for two violations of 47 U.S.C. §

227(b)(1)(A).

Second, Plaintiffs bring a claim under 47 U.S.C. § 227(b)(1)(B), which prohibits initiating a call to any residential telephone line using an artificial or prerecorded voice to deliver a message without prior express consent of the called party. Here, Plaintiffs have pled that Defendant made forty-one calls to (480) 595-XXXX, a residential number. (Compl. ¶¶ 27, 46.) Of these, thirty involved the use of a prerecorded voice. (Compl. ¶¶ 39-40, 42, 46.) Plaintiffs also allege that they had never heard of Defendant and had not given it permission to call. (Compl. ¶ 39.) The Court finds that Plaintiffs have sufficiently pled a meritorious claim for thirty violations of 47 U.S.C. § 227(b)(1)(B).

Third, Plaintiffs bring a claim under 47 U.S.C. § 227(c), which "provides that a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may bring an action for injunctive relief, damages, or both." *Drew*, 2016 WL 9185292, at \*7 (internal quotation omitted). These regulations include 47 C.F.R. § 64.1200(c)(2), which prohibits initiating any telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." This section also extends to telemarketing calls to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

Here, Plaintiffs have pled that Defendant made forty-one telemarketing calls to (480) 595-XXXX, a residential number registered on the Do Not Call Registry. (Compl. ¶¶ 26, 46.) Thus, Plaintiffs have sufficiently pled a meritorious claim for forty-one violations of 47 U.S.C. § 227(c). The Court, however, finds that Plaintiffs have not adequately pled a 47 U.S.C. § 227(c) violation as to the February 23, 2017 call to (925) 253-XXXX. While this number is also registered on the Do Not Call Registry, Plaintiffs have only pled **one** call to this number, whereas 47 U.S.C. § 227(c) requires that a person receive "**more** than one telephone call within any 12-month period." The Court concludes that Plaintiff has sufficiently pled a meritorious claim for forty-one violations of 47 U.S.C. § 227(c) only.

### iii. *Eitel* Factor 4: The Sum of Money at Stake

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at

7

stake in relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; see also *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003). "When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored." *Freligh v. Roc Asset Solutions, LLC*, Case No. 16-cv-653-MEJ, 2016 WL 3748723, at *6 (N.D. Cal. June 8, 2016) (citing *Eitel*, 782 F.2d at 1472). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

Here, Plaintiffs seek $111,000 in statutory damages under the TCPA and $475 in costs. As discussed below, the Court will adjust this amount to reflect the TCPA damages available. "Because this amount is neither substantial nor unreasonable and the statutory damages are tied to Defendant's misconduct, the fourth factor weighs in favor of default judgment." *Freligh*, 2016 WL 3748723, at *6; *see also Drew*, 2016 WL 9185292, at *8 ("As adjusted, and in light of the connection between the alleged wrongdoing and the statutory damages, the amount of money at stake does not weigh against default judgment."

#### iv.   *Eitel* Factor 5: Low Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and Plaintiffs have provided the Court with well-pleaded allegations supporting their claims. Moreover, because Defendant has not appeared in this lawsuit, the court has no way to know if any of the facts alleged in the complaint would be disputed if this matter were litigated on the merits. This factor thus does not weigh against entry of a default judgment. *See, e.g. Elektra Entm't Group Inc. v. Crawford,* 266 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is only a remote possibility that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.,* 219 F.R.D. at 500; *PepsiCo, Inc.,* 238 F.Supp.2d at 1177.

#### v.   *Eitel* Factor 6: Excusable Neglect

The Court finds that there is no evidence of excusable neglect. Plaintiffs served Defendant with the summons and complaint. (Dkt. No. 7.) The summons and complaint were also mailed to

8

Defendant. (*Id.*) Moreover, Plaintiffs also served Defendant by mail with notice of the instant motion for default judgment. (Dkt. No. 16-4.) Plaintiff also e-mailed the default judgment papers to an e-mail address associated with Defendant. (Dkt. No. 18 ¶¶ 10-11.) Despite ample notice of this lawsuit and Plaintiffs' intention to seek default judgment, Defendant has failed to appear in this action. Thus, the record supports a conclusion that Defendant has chosen not to defend this action, and not that the default resulted from excusable neglect. Accordingly, this *Eitel* factor favors the entry of a default judgment.

### vi. *Eitel* Factor 7: Strong Policy Favoring Decisions on the Merits

Defendant was given an opportunity to have this dispute decided on the merits, but did not respond to the Complaint. Defendant's failure to respond makes a decision on the merits impractical. The policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits is outweighed by the other *Eitel* factors.

### vii. Conclusion

The Court concludes that the *Eitel* factors favor the entry of default judgment. Accordingly, the Court recommends that the district judge GRANT Plaintiffs' motion for default judgment, except as to the 47 U.S.C. § 227(c) claim with respect to the February 23, 2017 call to Plaintiff Abante.

## C. Relief Sought

### i. Statutory Damages

The TCPA authorizes private actions for damages equal to the greater of actual monetary loss or $500. 47 U.S.C. § 227(c)(5). The Court also has discretion to award up to three times the amount available under the TCPA where the violation was willingly or knowingly committed. *Id.* Further, courts in this district have found that a plaintiff could recover separate "statutory TCPA damages for § 227(b) and § 227(c) violations arising from the same phone call." *Drew*, 2016 WL 9185292, at *10; *Roylance v. ALG Real Estate Servs., Inc.*, Case No. 14-cv-2445-PSG, 2015 WL 1522244, at *10 (N.D. Cal. Mar. 16, 2015). In *Roylance*, the district court explained that "'the fact that the statute includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both.'" 2015 WL 1522244, at *10 (quoting *Charvat v.*

1  *NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011)).

2  Here, Plaintiffs seek treble damages for every violation, in the following amounts:

|  | Heidarpour | Abante |
|---|---|---|
| 47 U.S.C. § 227(b)(1)(A) |  | $3,000 (2 violations) |
| 47 U.S.C. § 227(b)(1)(B) | $45,000 (30 violations) |  |
| 47 U.S.C. § 227(c) | $61,500 (41 violations) | $1,500 (1 violation) |
| Total: | $106,500 | $4,500 |

As an initial matter, Plaintiff Abante has not established a violation of 47 U.S.C. § 227(c), as only one call was made to Plaintiff Abante at (925) 253-XXXX. Next, the Court must determine whether Plaintiffs are entitled to treble damages because the violations were "willful" or "knowing." In *Roylance*, the district court concluded "that a person need not have intent to commit an unlawful act in order to act willfully or knowingly under the TCPA." 2015 WL 1522244, at *10. The district court noted that although the TCPA did not define "willfully" or "knowingly," "courts have generally interpreted willfulness to imply only that an action was intentional. Further . . . while the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as 'the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision, rule or regulation.'" *Id.* (internal quotation and modification omitted). Applying this standard, the *Roylance* court found that enhanced damages were appropriate, as there was no indication that the defendants had stopped using prerecorded calls; instead, the plaintiff alleged that the defendants continued to use prerecorded calls and violate do-not-call requests. *Id.* at *11.

In *Ebert v. National Brokers of America, Inc.*, the district court awarded enhanced damages depending on whether the plaintiff had requested that the defendant stop calling her. No. 2:17-cv-1983-KJM-EFB, 2018 WL 2440679, at *3 (E.D. Cal. May 31, 2018). The district court awarded $500 each for thirteen violations that occurred prior to the plaintiff's first request that the defendant stop calling her. *Id.* The district court then awarded $1,000 each for five violations that occurred during the time the plaintiff made her second and third demands to stop calling. Finally, the district court awarded $1,500 each for forty-four calls that occurred after the plaintiff had made three demands to stop calling her. *Id.*

1    Here, Defendant made a total of forty-three calls to the three numbers registered by
2 Plaintiffs. With respect to the calls made to Plaintiff Abante, only one call was made to each of
3 these numbers. While Plaintiff Heidarpour states that he asked Defendant to stop calling, there is
4 no allegation that he asked Defendant to not call the two separate numbers related to Plaintiff
5 Abante. (*See* Compl. ¶ 45.) Thus, for these violations, the Court finds that $500 per violation is
6 appropriate.

As to the calls to Plaintiff Heidarpour, forty of the calls were made to his (480) 595-XXXX number after Plaintiff Heidarpour requested that Defendant stop calling. (Compl. ¶¶ 45-46.) Plaintiff Heidarpour also states that he repeatedly asked Defendant to stop calling, although Plaintiff Heidarpour does not state when the other requests were made. (*See* Compl. ¶ 45.) The Court finds that $500 per violation is appropriate for the first phone call on November 11, 2015. After that, Defendant was on notice to stop calling Plaintiff Heidarpour, yet made thirty-nine additional calls, including twenty-three calls in August 2016 alone, many of which occurred on the same day. (Compl. ¶ 46.) The Court therefore finds that $1,500 per violation for the remaining phone calls to (480) 595-XXXX is appropriate. The Court recommends the following statutory penalties, totaling $105,500:

|  | Heidarpour | Abante |
| --- | --- | --- |
| 47 U.S.C. § 227(b)(1)(A) |  | $1,000 ($500 for 2/22/17 call to (209) 383-XXXX, $500 for 2/23/17 call to (925) 253-XXXX) |
| 47 U.S.C. § 227(b)(1)(B) | $44,0000 ($500 for 11/11/15 call to (480) 595-XXXX, $1,500 for each of the 29 subsequent prerecorded voice calls to (480) 595-XXXX) |  |
| 47 U.S.C. § 227(c) | $60,500 ($500 for 11/11/15 call to (480) 595-XXXX, $1,500 for each of the 40 subsequent prerecorded voice calls to (480) 595-XXXX) |  |
| Total: | $104,500 | $1,000 |

### ii.    Costs

Plaintiffs seek reimbursement of costs totaling $475, which includes the $400 filing fee

11

and $75 process fee. (Foughner Decl. ¶ 8.) The Court finds these costs to be reasonable and recoverable.

### IV. CONCLUSION

For the reasons set forth above, and for good cause shown, the Court RECOMMENDS that Plaintiffs' motion for default judgment be GRANTED IN PART AND DENIED IN PART, and that default judgment be entered against Defendant in the amount of $105,975 ($104,500 for Plaintiff Heidarpour, $1,000 for Plaintiff Abante, and $475 in costs).

Any party may file objections to this report and recommendation with the district judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

Plaintiffs shall serve a copy of this report and recommendation on Defendant.

IT IS SO RECOMMENDED.

Dated: June 21, 2018

KANDIS A. WESTMORE
United States Magistrate Judge