1

2

3

4

5

6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

FRED HEIDARPOUR, et al.,

8

Plaintiffs,

9

v.

10

EMPIRE CAPITAL FUNDING GROUP
INC.,

11

Defendant.

Case No.  18-cv-00250-YGR (KAW)

**REPORT AND RECOMMENDATION
TO GRANT IN PART AND DENY IN
PART RENEWED MOTION FOR
DEFAULT JUDGMENT**

Re: Dkt. No. 26

12

13      Plaintiffs Fred Heidarpour and Abante Rooter and Plumbing Inc. ("Abante Rooter") filed

14   the instant suit against Defendant Empire Capital Funding Group Inc., asserting violations of the

15   Telephone Consumer Protection Act ("TCPA") and California's Unfair Competition Law

16   ("UCL").  (Compl. ¶¶ 1, 63.)  On August 2, 2018, Plaintiffs filed a renewed motion for default

17   judgment.  (Plfs.' Renewed Mot. for Default Judgment, Dkt. No. 26.)  On September 20, 2018, the

18   undersigned held a hearing on Plaintiffs' motion, and Defendant did not appear.  Having reviewed

19   Plaintiffs' filings, the undersigned RECOMMENDS that Plaintiffs' motion be GRANTED IN

20   PART AND DENIED IN PART.

21                              **I.      BACKGROUND**

22          **A.      Factual Background**

23       Plaintiff Heidarpour is an Arizona citizen who conducts business in the Northern District

24   of California.  (Compl. ¶ 2.)  Plaintiff Heidarpour has registered the phone number (480) 595-

25   XXXX; this number is registered to a residential telephone service and has been listed on the

26   National Do Not Call Registry since November 12, 2014.  (Compl. ¶¶ 25-27; Heidarpour Decl. ¶

27   7, Dkt. No. 26-1; *see also* Heidarpour Decl., Exh. 1.)

28        Plaintiff Abante Rooter is a California corporation, with its principal place of business in

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Emeryville, California.  (Compl. ¶ 3.)  Plaintiff Abante Rooter has registered the phone number

2    (209) 383-XXXX, which is registered to a cellular telephone service.  (Compl. ¶¶ 30-31.)  Plaintiff

3    Heidarpour answers the calls made to (209) 383-XXXX.  Plaintiff Abante Rooter also has

4    registered the phone number (925) 253-XXXX.  (Compl. ¶ 34.)  This number is registered to a

5    cellular telephone service and has been listed on the National Do Not Call Registry since February

6    21, 2007.  (Compl. ¶¶ 35-36; Heidarpour Decl. ¶ 8, Exh. 2.)  Plaintiff Heidarpour also answers

7    calls made to this number.  (Compl. ¶ 34.)

8         Defendant brokers loans from alternative lenders to small businesses.  (Compl. ¶ 20.)  On

9    November 11, 2015, Plaintiff Heidarpour received a call on his cell phone; the call was directed to

10   (480) 595-XXXX, and calls to this number are forwarded to Plaintiff Heidarpour's cell phone

11   while he is traveling.  (Compl. ¶ 39.)  When Plaintiff Heidarpour picked up, he received a

12   prerecorded call advertising small business loans from Defendant.  Plaintiffs had never heard of

13   Defendant, and had not given Defendant permission to call his number.  On November 18, 2015,

14   Plaintiff Heidarpour received another call to (480) 595-XXXX, causing his cell phone to ring.

15   (Compl. ¶ 40.)  The call was again a prerecorded message advertising small business loans from

16   Defendant.  (Compl. ¶ 40.)

17        In total, Plaintiffs received forty-three calls from Defendant.  (Compl. ¶¶ 41, 46.)  Forty-

18   one of the calls were made to (480) 595-XXXX, including twenty-three calls in August 2016, six

19   calls in September 2016, one call in October 2016, five calls in November 2016, three calls in

20   February 2017, and one call in March 2017.  (Compl. ¶ 46.)  One call was made to (209) 383-

21   XXXX on February 22, 2017, and one call was made to (925) 253-XXXX on February 23, 2017.

22   (Compl. ¶ 46.)  Forty-two of the calls were made after Plaintiffs requested that Defendant stop

23   calling.  (Compl. ¶¶ 45-46.)  More than a dozen of the calls were made to Plaintiff Heidarpour

24   while he was in the Northern District of California.  (Compl. ¶ 43.)  Most of the calls used a

25   prerecorded voice, while the remainder was marked by an unnatural click or pause, indicating that

26   the call was placed by an automatic telephone dialing system ("ATDS").  (Compl. ¶¶ 42, 46.)

27   **B.    Procedural Background**

28        On January 11, 2018, Plaintiffs filed the instant suit against Defendant, alleging four

1   causes of action: (1) non-emergency robocalls to cellular telephones, in violation of 47 U.S.C. §

2   227(b)(1)(A); (2) non-emergency robocalls to residential telephones, in violation of 47 U.S.C. §

3   227(b)(1)(B); (3) telemarketing solicitations to National Do Not Call registrants, in violation of 47

4   U.S.C. § 227(c); and (4) violation of California's Unfair Competition Law.  (Compl. ¶¶ 47-65.)

5   The complaint and summons were served on Defendant by personally delivering a copy to an

6   authorized individual at the business address, and by mailing a copy of the complaint and

7   summons.  (Dkt. No. 7.)  On March 7, 2018, Plaintiffs moved for entry of default.  (Dkt. No. 8.)

8   On March 9, 2018, the Clerk of the Court entered default against Defendant.  (Dkt. No. 9.)

9          On May 10, 2018, Plaintiffs filed a motion for default judgment, seeking $106,500 in

10   statutory damages for Plaintiff Heidarpour, $4,500 in statutory damages for Plaintiff Abante

11   Rooter, and $475 in costs.  (Dkt. No. 16 at 16.)  Defendant did not oppose, nor did Defendant

12   appear at the hearing on Plaintiff's motion for default judgment.  (*See* Dkt. No. 22.)

13          On June 21, 2018, the undersigned issued a report and recommendation to grant in part and

14   deny in part Plaintiffs' motion for default judgment.  (Default Judgment R&R., Dkt. No. 19.)  The

15   undersigned found that Plaintiffs had sufficiently pled a meritorious claim for two violations of 47

16   U.S.C. § 227(b)(1)(A), thirty violations of 47 U.S.C. §227(b)(1)(B), and forty-one violations of 47

17   U.S.C. § 227(c).  (*Id.* at 6-7.)  The undersigned found, however, that Plaintiffs did not adequately

18   plead a violation of 47 U.S.C. § 227(c) as to a February 23, 2017 call to (925) 253-XXXX.  (*Id.* at

19   7.)  Based on these violations, the undersigned recommended the award of $105,500 in statutory

20   damages, as well as $475 in costs.  (*Id.* at 12.)

21          The case was then reassigned.  (Dkt. No. 23.)  No objections were filed.  On July 18, 2018,

22   the presiding judge declined to adopt the Report.  (Dkt. No. 25 at 1.)  First, the presiding judge

23   found that there was insufficient allegations and evidence to support a discretionary award of

24   treble damages.  (*Id.* at 3.)  Specifically, the presiding judge found there was insufficient

25   information about how Plaintiff Heidarpour requested that Defendant stop calling, and that

26   Plaintiff provided no evidence about the size of the company or other facts relevant to the

27   appropriate deterrence amount.  (*Id.*)  Second, the presiding judge found that Plaintiffs did not

28   specifically allege facts or provide supporting evidence to establish when and how Plaintiffs

United States District Court
Northern District of California

3

1    requested that the phone numbers be placed on the Do Not Call Registry.  (*Id.*)  Third, the

2    presiding judge found that Plaintiffs did not offer evidence or allegations that Defendant was the

3    originator of the calls or controlled the sending phone numbers.  (*Id.* at 4.)

4          On August 2, 2018, Plaintiffs filed a renewed motion for default judgment, seeking

5    $90,000 in statutory damages for Plaintiff Heidarpour, $1,000 in statutory damages for Plaintiff

6    Abante Rooter, and $475 in costs.  (Plfs.' Renewed Mot. for Default Judgment at 20.)  Plaintiff

7    Heidarpour also attached the e-mails he received from the Federal Trade Commission which

8    confirmed his registration of the phone number (408) 595-XXXX on November 12, 2014, and the

9    phone number (925) 253-XXXX on February 21, 2007.  (Heidarpour Decl. ¶¶ 7-8, Exhs. 1-2.)

10   Plaintiff also stated that he had asked Defendant to stop calling him in e-mails sent on November

11   18, 2015, November 29, 2015, and October 15, 2016.  (Heidarpour Decl. ¶¶ 9-11, Exhs. 3-5.)

12         The motion was served on Defendant by certified mail.  (Dkt. No. 26-8.)  As of the date of

13   this order, Defendant has not responded.

14                              **II.    LEGAL STANDARD**

15         Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant,

16   to enter default judgment in a case.  "The district court's decision whether to enter default

17   judgment is a discretionary one."  *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).  In

18   determining whether default judgment is appropriate, the Ninth Circuit has enumerated the

19   following factors for the court to consider:  (1) the possibility of prejudice to the plaintiff; (2) the

20   merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money

21   at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default

22   was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

23   Procedure favoring decisions on the merits.  *Eitel v McCool,* 782 F.2d 1470, 1471-72 (9th Cir.

24   1986).  Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil

25   Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in

26   amount, what is demanded in the pleadings."  Upon entry of default, all factual allegations within

27   the complaint are accepted as true, except those allegations relating to the amount of damages.

28   *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1

## III.    DISCUSSION

2

### A.    Jurisdictional Requirements

3

#### i.    Subject Matter and Personal Jurisdiction

4      In considering whether to enter default judgment, a district court must first determine

5   whether it has jurisdiction over the subject matter and the parties to the case.  (*In re Tuli,* 172 F.3d

6   707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to

7   plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over

8   both the subject matter and the parties").)  In his complaint, Plaintiff alleges violations of a federal

9   statute, the TCPA, 28 U.S.C. § 1331.  The Court thus has subject matter jurisdiction over this

10   action pursuant to 28 U.S.C. §1331(a).[1]

11      Personal jurisdiction over a nonresident defendant is tested by a two-part analysis.  First,

12   the exercise of jurisdiction must satisfy the requirements of the applicable long-arm statute.

13   Second, the exercise of jurisdiction must comport with federal due process.  (*Dow Chem. Co. v.*

14   *Calderon,* 422 F.3d 827, 830 (9th Cir. 2005).)  The applicable long-arm statute is California's.

15   California's long-arm statute permits local courts to exercise personal jurisdiction to the extent

16   allowed by the Due Process Clause of the California and United States Constitutions.  (Cal. Civ.

17   Proc. Code § 410.10.  Federal Due Process requires that a nonresident defendant have certain

18   minimum contacts with the forum state such that the exercise of personal jurisdiction does not

19   offend traditional notions of fair play and substantial justice.  (*Int'l Shoe Co. v. Washington,* 326

20   U.S. 310, 316 (1945).)

21      There are two types of personal jurisdiction – general and specific. The Ninth Circuit

22   applies the following three-part test for specific jurisdiction:

23          (1) The non-resident defendant must purposefully direct his
            activities or consummate some transaction with the forum or
24          resident thereof; or perform some act by which he purposefully
            avails himself of the privilege of conducting activities in the forum,
25          thereby invoking the benefits and protections of its laws;

26          (2) the claim must be one which arises out of or relates to the

27   _____

[1] Plaintiffs do not seek relief related to the Unfair Competition Law claim.  (*See* Plfs.' Mot. at 3.)
28   The Court would, however, have supplemental jurisdiction to decide the related state law claims
under 28 U.S.C. § 1367.

1

2

defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and
substantial justice, i.e. it must be reasonable.

3    *Schwarzenegger v. Fred Martin Motor Company*, 374 F.3d 797, 802 (9th Cir. 2004).

4          In this case, Defendant made calls to Plaintiff Heidarpour while he was in this district, as

5    well as to Plaintiff Abante Rooter, a resident of this district.  (Compl. ¶¶ 43-44.)  Defendant

6    therefore directed its actions at California, and the claims herein arise from those same actions.

7    *Compare with Drew v. Lexington Consumer Advocacy*, Case No. 16-cv-200-LB, 2016 WL

8    9185292, at *3 (N.D. Cal. Aug. 11, 2016) (finding that the out-of-state corporate defendant

9    purposefully directed its activities to California by sending six text messages to a California

10   resident), *report and recommendation adopted by Drew v. Lexington Consumer Advocacy*, Case

11   No. 16-cv-200-SBA, 2016 W: 9223901 (N.D. Cal. Sept. 2, 2016).

12               **ii.    Venue**

13         The undersigned finds that venue is proper because a substantial part of the events giving

14   rise to the claim occurred in this district.  28 U.S.C. § 1391(b)(2).  At least a dozen of the calls

15   were made to Plaintiff Heidarpour while he was in this district.  (Compl. ¶ 43.)  Calls were also

16   made to Plaintiff Abante Rooter, who is a California resident, and thus "[t]he harms suffered by

17   Plaintiff [Abante Rooter] were felt in the [Northern] District, where [it] resides, which under the

18   Ninth Circuit, is enough to satisfy the 'substantial part of the events' test." *Sapan v. Dynamic

19   Network Factory, Inc.*, Case No. 13-cv-1966-MMA (WVG), 2013 WL 12094829, at *3 (S.D. Cal.

20   Nov. 25, 2013).

21               **iii.    Service of Process**

22         This case was filed on January 11, 2018, and Defendant was served with the summons and

23   complaint on February 12, 2018 by Mohamed Bouri, who is over the age of 18 and not a party to

24   this action.  (Dkt. No. 7.)  The summons and complaint were also mailed on February 15, 2018.

25   The notarized Affidavit of Process was filed with the Court on March 6, 2018.  Defendant failed to

26   answer, so Plaintiff filed a request for entry of default.  (Dkt. No. 8.)  Defendant's default was

27   entered on March 16, 2018.  (Dkt. No. 9.)  Both the prior motion for default judgment and instant

28   renewed motion for default judgment were served on Defendant.  (Dkt. Nos. 16-4, 26-8.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    **B.    *Eitel* Factors**

2        An analysis of the *Eitel* factors establishes that a default judgment is appropriate in this

3    case.

4                    **i.    *Eitel* Factor 1: Possibility of Prejudice to Plaintiff**

5        If Plaintiffs are not granted relief in this case, they will likely be left without other

6    recourse.  Such potential prejudice to the plaintiff militates in favor of granting a default judgment.

7    See *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).

8                    **ii.    *Eitel* Factors 2 and 3: Meritorious Claim Alleged in Complaint**

9        Plaintiffs bring three causes of action under the TCPA.

10                    a.    47 U.S.C. § 227(b)(1)(A)

11        First, Plaintiffs bring a claim under 47 U.S.C. § 227(b)(1)(A), which prohibits making a

12    call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to

13    any telephone number assigned to a cellular telephone service.  A plaintiff must show: "(1) the

14    defendant called a cellular telephone number; (2) using an automatic telephone dialing [or

15    artificial or prerecorded voice]; (3) without the recipient's prior express consent." *Meyer v.*

16    *Portfolio Recovery Assocs.*, 707 F.3d 1036, 1043 (9th Cir. 2012).

17        Here, Plaintiffs have pled that Defendant made one call each to (209) 383-XXXX and

18    (925) 253-XXXX, both of which are cell phone numbers.  (Compl. ¶¶ 31, 36, 46.)  Plaintiffs allege

19    that the calls were made by Defendant.  (Compl. ¶¶ 41 ("Empire Capital placed at least 43

20    telemarketing robocalls to [Plaintiffs] at the phone numbers listed above"); 46 ("the following

21    table summarizes some of the non-emergency telemarketing robocalls placed by Empire Capital to

22    Plaintiffs," including a February 22, 2017 call to (209) 383-XXXX and a February 23, 2017 call to

23    (925) 253-XXXX).)  The calls advertised small business loans from Defendant.  (Compl. ¶¶ 39-

24    40, 44.)  Both calls were placed by the phone number (347) 342-0307, a number that has been the

25    subject of other complaints about calls from Empire and Empire Capital.  (*See* Plfs.' Renewed

26    Mot. for Default Judgment at 18.)

27        Plaintiffs also plead that the calls were placed by an ATDS, as "marked by an unnatural

28    click or pause at the beginning."  (Compl. ¶¶ 42, 46.)  Courts have found that alleging a click or

United States District Court
Northern District of California

1    pause at the beginning of the call is sufficient to plead the use of an ATDS.  *Martin v. Direct*

2    *Wines, Inc.*, No. 15 C 757, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) ("To raise a right to

3    relief above the speculative level on a TCPA claim, a plaintiff can include facts such as . . . having

4    heard a distinctive 'click and pause' after having answered the call"); *Connelly v. Hilton Grant*

5    *Vacations Co., LLC*, No. 12CV599 JLS (KSC), 2012 WL 2129364, at *5 (S.D. Cal. June 11,

6    2012) (finding sufficient allegations of the use of an ATDS where the plaintiffs alleged that "[t]he

7    calls had a delay prior to a live person speaking to Plaintiffs or did not even transfer to a live

8    person").  Finally, Plaintiffs plead that they had never heard of Defendant and had not given it

9    permission to call.  (Compl. ¶ 39.)  Plaintiffs have sufficiently pled a meritorious claim for two

10   violations of 47 U.S.C. § 227(b)(1)(A).

11                          b.   47 U.S.C. § 227(b)(1)(B)

12          Second, Plaintiffs bring a claim under 47 U.S.C. § 227(b)(1)(B), which prohibits initiating

13   a call to any residential telephone line using an artificial or prerecorded voice to deliver a message

14   without prior express consent of the called party.  Here, Plaintiffs have pled that Defendant made

15   forty-one calls to (480) 595-XXXX, a residential number.  (Compl. ¶¶ 27, 41, 46.)  Of these, thirty

16   involved the use of a prerecorded voice.  (Compl. ¶¶ 39-40, 42, 46.)  The calls advertised small

17   business loans from Defendant.  (Compl. ¶¶ 39-40, 44.)  Plaintiffs also allege that they had never

18   heard of Defendant and had not given it permission to call.  (Compl. ¶ 39.)  Plaintiffs have

19   sufficiently pled a meritorious claim for thirty violations of 47 U.S.C. § 227(b)(1)(B).

20                          c.   47 U.S.C. § 227(c)

21          Third, Plaintiffs bring a claim under 47 U.S.C. § 227(c), which "provides that a person

22   who has received more than one telephone call within any 12-month period by or on behalf of the

23   same entity in violation of the regulations prescribed under this subsection may bring an action for

24   injunctive relief, damages, or both."  *Drew*, 2016 WL 9185292, at *7 (internal quotation omitted).

25   These regulations include 47 C.F.R. § 64.1200(c)(2), which prohibits initiating any telephone

26   solicitation to "[a] residential telephone subscriber who has registered his or her telephone number

27   on the national do-not-call registry . . . ."  This section also extends to telemarketing calls to

28   wireless telephone numbers.  47 C.F.R. § 64.1200(e).

8

1      Here, Plaintiffs have pled that Defendant made forty-one telemarketing calls to (480)

2   595-XXXX, a residential number registered on the Do Not Call Registry.  (Compl. ¶¶ 26, 41, 46.)

3   The calls advertised small business loans from Defendant.  (Compl. ¶¶ 39-40, 46.)  Although the

4   factual allegations of Plaintiffs' complaint are taken as true after entry of default, Plaintiffs have

5   provided outside evidence that the (480) 595-XXXX number was registered on the Do Not Call

6   Registry around November 12, 2014, prior to the first call being made in November 2015.

7   (Heidarpour Decl. ¶ 7, Exh. 1.)  Plaintiffs also point to various complaints Plaintiff Heidarpour

8   made about several of the telephone numbers which were used to call (480) 595-XXXX, which

9   complained about calls offering business loans from Defendant.  (Plfs.' Renewed Mot. for

10   Summary Judgment at 17-18.)  Plaintiffs have sufficiently pled a meritorious claim for forty-one

11   violations of 47 U.S.C. § 227(c).

12              **iii.    *Eitel* Factor 4: The Sum of Money at Stake**

13      Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at

14   stake in relation to the seriousness of defendant's conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at

15   1177; see also *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal.

16   2003).  "When the amount at stake is substantial or unreasonable in light of the allegations in the

17   complaint, default judgment is disfavored."  *Freligh v. Roc Asset Solutions, LLC*, Case No. 16-cv-

18   653-MEJ, 2016 WL 3748723, at \*6 (N.D. Cal. June 8, 2016) (citing *Eitel*, 782 F.2d at 1472).

19   "However, when the sum of money at stake is tailored to the specific misconduct of the

20   defendant, default judgment may be appropriate."  *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100

21   (N.D. Cal. 2014).

22      Here, Plaintiffs seek $91,000 in statutory damages under the TCPA and $475 in costs.  As

23   discussed below, this amount will be reduced in part to reflect the proper number of violations.

24   "Because this amount is neither substantial nor unreasonable and the statutory damages are tied to

25   Defendant's misconduct, the fourth factor weighs in favor of default judgment."  *Freligh*, 2016

26   WL 3748723, at \*6; *see also Drew*, 2016 WL 9185292, at \*8 ("As adjusted, and in light of the

27   connection between the alleged wrongdoing and the statutory damages, the amount of money at

28   stake does not weigh against default judgment."

*United States District Court*
*Northern District of California*

9

United States District Court
Northern District of California

1      **iv.    *Eitel* Factor 5: Low Possibility of Dispute Concerning Material Facts**

2          The facts of this case are relatively straightforward, and Plaintiffs have provided the Court

3      with well-pleaded allegations supporting their claims.  Moreover, because Defendant has not

4      appeared in this lawsuit, the court has no way to know if any of the facts alleged in the complaint

5      would be disputed if this matter were litigated on the merits.  This factor thus does not weigh

6      against entry of a default judgment.  *See, e.g. Elektra Entm't Group Inc. v. Crawford,* 266 F.R.D.

7      388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true

8      after the court clerk enters default judgment, there is only a remote possibility that any genuine

9      issue of material fact exists."); *accord Philip Morris USA, Inc.,* 219 F.R.D. at 500; *PepsiCo, Inc.,*

10     238 F.Supp.2d at 1177.

11     **v.    *Eitel* Factor 6: Excusable Neglect**

12         The undersigned finds that there is no evidence of excusable neglect.  Plaintiffs served

13     Defendant with the summons and complaint.  (Dkt. No. 7.)  The summons and complaint were

14     also mailed to Defendant.  (*Id.*)  Moreover, Plaintiffs also served Defendant by mail with notice of

15     the instant motion for default judgment.  (Dkt. No. 16-4.)  Plaintiff also e-mailed the default

16     judgment papers to an e-mail address associated with Defendant.  (Dkt. No. 18 ¶¶ 10-11.)  Despite

17     ample notice of this lawsuit and Plaintiffs' intention to seek default judgment, Defendant has failed

18     to appear in this action.  Thus, the record supports a conclusion that Defendant has chosen not to

19     defend this action, and not that the default resulted from excusable neglect.  Accordingly, this *Eitel*

20     factor favors the entry of a default judgment.

21     **vi.    *Eitel* Factor 7: Strong Policy Favoring Decisions on the Merits**

22         Defendant was given an opportunity to have this dispute decided on the merits, but did not

23     respond to the Complaint.  Defendant's failure to respond makes a decision on the merits

24     impractical.  The policy underlying the Federal Rules of Civil Procedure favoring a decision on

25     the merits is outweighed by the other *Eitel* factors.

26     **vii.    Conclusion**

27         The undersigned concludes that the *Eitel* factors favor the entry of default judgment.

28     Accordingly, the undersigned recommends that the presiding judge GRANT Plaintiffs' motion for

10

1    default judgment.

2         **C.    Relief Sought**

3              **i.    Statutory Damages**

4         The TCPA authorizes private actions for damages equal to the greater of actual monetary

5    loss or $500.  47 U.S.C. § 227(c)(5).  The Court also has discretion to award up to three times the

6    amount available under the TCPA where the violation was willingly or knowingly committed.  *Id.*

7    Further, courts in this district have found that a plaintiff could recover separate "statutory TCPA

8    damages for § 227(b) and § 227(c) violations arising from the same phone call."  *Drew*, 2016 WL

9    9185292, at *10; *Roylance v. ALG Real Estate Servs., Inc.*, Case No. 14-cv-2445-PSG, 2015 WL

10   1522244, at *10 (N.D. Cal. Mar. 16, 2015).  In *Roylance*, the district court explained that "'the fact

11   that the statute includes separate provisions for statutory damages in subsections (b) and (c)

12   suggests that a plaintiff could recover under both.'"  2015 WL 1522244, at *10 (quoting *Charvat v.*

13   *NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011)).

14        In *Ebert v. National Brokers of America, Inc.*, the district court awarded enhanced damages

15   depending on whether the plaintiff had requested that the defendant stop calling her.  No. 2:17-cv-

16   1983-KJM-EFB, 2018 WL 2440679, at *3 (E.D. Cal. May 31, 2018).  The district court awarded

17   $500 each for thirteen violations that occurred prior to the plaintiff's first request that the

18   defendant stop calling her.  *Id.*  The district court then awarded $1,000 each for five violations that

19   occurred during the time the plaintiff made her second and third demands to stop calling.  Finally,

20   the district court awarded $1,500 each for forty-four calls that occurred after the plaintiff had made

21   three demands to stop calling her.  *Id.*

22        Here, Plaintiff Heidarpour sent Defendant do not call requests on November 24, 2015,

23   November 29, 2015, and October 15, 2016.  (Heidarpour Decl. ¶¶ 9-11, Exhs. 3-5.)  Plaintiff

24   Abante now seeks $500 per violation, while Plaintiff Heidarpour seeks $500 per violation before

25   the second documented do not call request, $1,000 per violation between the second and third

26   documented do not call request, and $1,500 per violation after the third demand to stop calling.

27   (Plfs.' Renewed Mot. for Default Judgment at 16.)

28

United States District Court
Northern District of California

|  | Heidarpour | Abante |
|---|---|---|
| 47 U.S.C. § 227(b) | $45,000 ($500 for 11/11/15 and 11/18/15 calls to (480) 595-XXXX; $1,000 for 29 calls to (480) 595-XXXX before 10/15/16; $1,500 for 10 subsequent calls to (480) 595-XXXX. | $1,000 ($500 for 2/22/17 call to (209) 383-XXXX; $500 for 2/23/17 call to (925) 253-XXXX) |
| 47 U.S.C. § 227(c) | $45,000 ($500 for 11/11/15 and 11/18/15 calls to (480) 595-XXXX; $1,000 for 29 calls to (480) 595-XXXX before 10/15/16; $1,500 for 10 subsequent calls to (480) 595-XXXX. | |
| Total: | $90,000 | $1,000 |

As an initial matter, with respect to the 47 U.S.C. § 227(b) claim, Plaintiff Heidarpour has

not established violations of this section for the August 17, 2016 call or the calls after October 15,

2016 to (480) 595-XXXX.  In his renewed motion, Plaintiff Heidarpour does not specify which

prong of 47 U.S.C. § 227(b) he is relying upon.  At the hearing, Plaintiffs asserted that Plaintiff

Heidarpour was seeking damages for the August 17, 2016 call and the post-October 26, 2016 calls

to (480) 595-XXXX based on the calls being made by an automatic telephone dialing system

under § 227(b)(1).  47 U.S.C. § 227(b)(1)(A), however, does not prohibit the use of ATDS to

*residential* lines; it applies to "a paging service, cellular telephone service, specialized mobile

radio service, or other radio common carrier service . . . ."  *See ACA Int'l v. FCC*, 885 F.3d 687,

713 (D.C. Cir. 2018) ("Unlike with the autodialer restrictions on calls to wireless numbers, callers

are free to use ATDS equipment to dial residential lines as long as no 'artificial or prerecorded

voice' is used"); *Shupe v. Bank of Am., N.A.*, CV 13-019-TUC-JGZ (JR), 2015 U.S. Dist. LEXIS

31284, at *8 (D. Ariz. Jan. 21, 2015) ("The use of [ATDS] equipment is not prohibited when calls

are made to residential lines").  47 U.S.C. § 227(b)(1)(B), in contrast, applies to "any telephone

call to any residential telephone line," but only if the call is using an artificial or prerecorded

voice.  As the (480) 595-XXXX number is a residential line, 47 U.S.C. § 227(b)(1)(A) does not

apply.  (Compl. ¶ 27 ("(480) 595-XXXX is registered to a residential telephone service.").)

Additionally, Plaintiff cannot establish a violation of 47 U.S.C. § 227(b)(1)(B) as to these

calls.  This statute prohibits initiating a call to any residential telephone line using an artificial or

prerecorded voice to deliver a message without prior express consent of the called party.  The

August 17, 2016 call and every post-October 26, 2016 call to (480) 595-XXXX did not use a

United States District Court
Northern District of California

1    prerecorded voice.  (Compl. ¶ 46.)  Thus, Plaintiff is not entitled to statutory damages for a 47

2    U.S.C. § 227(b) violation as to these eleven calls.

3        Next, the undersigned must determine whether Plaintiffs are entitled to treble damages

4    because the violations were "willful" or "knowing."  In *Roylance*, the district court concluded "that

5    a person need not have intent to commit an unlawful act in order to act willfully or knowingly

6    under the TCPA."  2015 WL 1522244, at *10.  The district court noted that although the TCPA

7    did not define "willfully" or "knowingly," "courts have generally interpreted willfulness to imply

8    only that an action was intentional.  Further . . . while the TCPA does not define willful, the

9    Communications Act of 1943, of which the TCPA is a part, defines willful as 'the conscious or

10   deliberate commission or omission of such act, irrespective of any intent to violate any provision,

11   rule or regulation.'"  *Id.* (internal quotation and modification omitted).  Applying this standard, the

12   *Roylance* court found that enhanced damages were appropriate, as there was no indication that the

13   defendants had stopped using prerecorded calls; instead, the plaintiff alleged that the defendants

14   continued to use prerecorded calls and violate do-not-call requests.  *Id.* at *11.

15       Here, Defendant made a total of forty-three calls to the three numbers registered by

16   Plaintiffs.  Thirty-nine of the calls were made to Plaintiff Heidarpour at (480) 595-XXXX after

17   Plaintiff twice requested that Defendant stop calling on November 18, 2015 and November 29,

18   2015.  (Heidarpour Decl. ¶¶ 9-10, Exhs. 3-4; Compl. ¶ 46.)  Plaintiff Heidarpour also continued to

19   receive calls after his third request to stop calling on October 15, 2016.  (Heidarpour Decl. ¶ 11,

20   Exh. 5.)  Further, it appears that Defendant has a history of TCPA violations; another TCPA

21   lawsuit has been filed against Defendant -- which Defendant has also failed to defend -- and there

22   have been many complaints about Defendant's unsolicited telemarketing.  (*See* Plfs.' Renewed

23   Mot. for Default Judgment at 17-18.)

24       Finally, with respect to Plaintiffs' various TCPA actions, other courts have found that the

25   fact that a plaintiff brings suits against multiple TCPA violators does not reduce Defendants'

26   liability or Plaintiffs' ability to recover for the violations that were committed against him.  *See*

27   *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn.

28   2017) ("The statutory damages available under the TCPA are, in fact, specifically designed to

United States District Court
Northern District of California

13

1   appeal to plaintiffs' self-interest and to direct that self-interest towards the public good: like

2   statutory compensation for whistleblowers, they operate as bounties, increasing the incentives for

3   private enforcement of the law") (internal quotations omitted); *Abramson v. 1 Glob. Capital, LLC*,

4   Case No. 15-cv-61373-BLOOM/Valle, 2015 U.S. Dist. LEXIS 181721, at *8 (S.D. Fla. Sept. 21,

5   2015) ("Plaintiff's prior and unrelated conduct is ultimately irrelevant concerning the topic of this

6   litigation, to wit, whether Defendant placed an unsolicited, unauthorized, auto-dialed call to

7   Plaintiff in violation of the TCPA's prohibition on the same"); *Abramson v. CWS Apt. Homes,*

8   *LLC*, Civil Action No. 16-426, 2016 WL 6236370, at *3 (W.D. Penn. Oct. 24, 2016) ("We reject

9   CWS's argument Abramson's pursuit of his rights under the [TCPA] in other lawsuits

10  demonstrates the lack of an injury . . . . Abramson's decision to enforce his rights under the Act

11  does not negate the existence of a cognizable injury"); *see also Murray v. GMAC Mortg. Co.*, 434

12  F.3d 948, 954 (7th Cir. 2006) ("The district judge did not cite a single decision supporting the

13  proposition that someone whose rights have been violated by 50 different persons may sue only a

14  subset of the offenders.").

15       The undersigned therefore recommends that Plaintiff Abante receive $500 per violation

16  because only one call was made to each of its numbers. (*See* Compl. ¶ 45.)  As to the calls to

17  Plaintiff Heidarpour, forty of the calls were made to his (480) 595-XXXX number after Plaintiff

18  Heidarpour requested that Defendant stop calling.  (Compl. ¶¶ 45-46.)  The Court finds that $500

19  per violation is appropriate for the phone calls made prior to the November 29, 2015 request to

20  stop calling, which was Plaintiff Heidarpour's second request.  The undersigned also finds that

21  $1,000 per violation is appropriate for the phone calls made after the November 29, 2015 request

22  but before the October 15, 2016 demand to stop calling, and $1,500 per violation is appropriate

23  after the third demand to stop calling.  Accordingly, the recommended statutory penalties total

24  $75,000, as follows:

25  ///

26  ///

27  ///

28  ///

14

United States District Court
Northern District of California

United States District Court
Northern District of California

|  | Heidarpour | Abante |
|---|---|---|
| 47 U.S.C. § 227(b)(1)(A) |  | $1,000 ($500 for 2/22/17 call to (209) 383-XXXX; $500 for 2/23/17 call to (925) 253-XXXX) |
| 47 U.S.C. § 227(b)(1)(B) | $29,000 ($500 for 11/11/15 and 11/18/15 calls to (480) 595-XXXX; $1,000 for 28 calls to (480) 595-XXXX before 10/15/16 |  |
| 47 U.S.C. § 227(c) | $45,000 ($500 for 11/11/15 and 11/18/15 calls to (480) 595-XXXX; $1,000 for 29 calls to (480) 595-XXXX before 10/15/16; $1,500 for 10 subsequent calls to (480) 595-XXXX. |  |
| Total: | $74,000 | $1,000 |

**ii.    Costs**

Plaintiffs seek reimbursement of $475 in costs, specifically the $400 filing fee and $75 process fee.  (Foughner Decl. ¶ 8.)  The Court finds these costs to be reasonable and recoverable.

## IV.    CONCLUSION

For the reasons set forth above, and for good cause shown, the undersigned RECOMMENDS that Plaintiffs' motion for default judgment be GRANTED IN PART AND DENIED IN PART, and that default judgment be entered against Defendant in the amount of $75,475 ($74,000 for Plaintiff Heidarpour, $1,000 for Plaintiff Abante, and $475 in costs).

Any party may file objections to this report and recommendation with the district judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

Plaintiffs shall serve a copy of this report and recommendation on Defendant.

IT IS SO RECOMMENDED.

Dated: October 25, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge

15